IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIRECTV, INC., | CASE NO. CV-F-03-6247 LJO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS ON DEFAULT JUDGMENT MOTION** |
| vs. | (Doc. 40.) |
| DANA CHARETTE, et al., | |
| Defendants. | |

In this satellite piracy action, plaintiff DIRECTV, Inc. ("DIRECTV") seeks a $20,000 default judgment against defendant Dana Charette ("Charette"). Charette has neither made an appearance nor filed papers in this action. This is DIRECTV's second request for default judgment. A previous motion by plaintiff for court judgment was denied without prejudice in June 2004, for its claims under the Wiretap Act, its second cause of action for unauthorized interception of electronic communications. The denial directed DIRECTV to pursue its other claims and to show that its other claims were not barred by the statute of limitations.

This Court considered DIRECTV's default judgment motion on the papers and vacated the May 27, 2005 hearing, pursuant to this Court's Local Rule 78-230(h). For the reasons discussed below, this Court RECOMMENDS GRANTING DIRECTV's default judgment in the amount of $4,000, plus attorneys' fees and costs pursuant to Rule 54. An order of reference is on file in this matter referring this case to the Magistrate Judge; however, the defaulting defendant did not execute a consent form. Therefore, the Court finds it prudent to issue this decision through Findings and Recommendations.

**FACTUAL AND PROCEDURAL BACKGROUND**

DIRECTV is a direct broadcast satellite system that delivers various television programming to more than 10 million customers in the United States. DIRECTV electronically scrambles or encrypts its satellite transmissions to prevent unauthorized viewing of its programming. To view the programming, customers must subscribe to and create an account with DIRECTV and obtain an access card.

On September 12, 2003, DIRECTV filed this action alleging Charette purchased and used two pirate access devices to access unauthorized viewing of DIRECTV programming. The complaint alleges that Charette purchased and used two Pirate Access Devices, consisting of a printed circuit board device called a "Viper Unlooper," and a programmmer called a "Viper Reader/Writer." (Complaint ¶14.) DIRECTV's complaint alleges causes of action for (first) unauthorized reception of satellite signals in violation of the Federal Communications Act of 1934 ("Communications Act"), 47 U.S.C. § 605[1], (second) unauthorized interception of electronic communications in violation of the Electronic Communications Privacy Act ("Wiretap Act"), 18 U.S.C. §§ 2510-2521,[2] (third) unauthorized interception of electronic communications in violation of section 2512(1)(b), and (fourth) conversion.

On December 26, 2003, Charette was personally served with the summons and complaint. Charette has neither responded to the complaint nor appeared in this action. On January 30, 2004, this Court's clerk entered default against Charette. DIRECTV seeks default judgment against Charette to award statutory damages under its first claim for violation of the Federal Communications Act. The evidence establishes that defendant is not in military service. (Doc. 42, Exh. D to Decl. of Kimberly Columbo.)

/////

---

[1] 47 U.S.C. § 605 *et seq.* prohibits the unauthorized use of wire or radio communications, including unauthorized interception and broadcast of pirated cable or broadcasting programming.

[2] Unless otherwise indicated, all statutory references will to to Title 18 of the United States Code, the Wiretap Act.

Section 2511(a) prohibits intentional interception or endeavor to intercept any wire, oral , or electronic communication. Section 2520(a) provides a private civil right of action for violation of the Wiretap Act for "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used."

## ANALYSIS & DISCUSSION

### Default Judgment Standard

A court (not clerk) default judgment is required when the claim is for an amount that is not certain or capable of being made certain by computation. *See* F.R.Civ.P. 55(b)(2). Generally, the default entered by the clerk establishes a defendant's liability:

> Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment. "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages will be taken as true." (citations omitted). *Geddes v. United Financial Group,* 559 F.2d 557, 560 (9th Cir. 1977).

*Televideo Systems, Inc. v. Heidenthal,* 826 F.2d 915, 917-918 (9th Cir. 1987).

A full scale evidentiary hearing on a default judgment is not required in every case. *See* F.R.Civ.P. 55(b)(2); *James v. Frame,* 6 F.3d 307, 310 (5th Cir. 1993). The amount of damages may be fixed by affidavits or declarations. *Transportes Aereos De Angola v. Jet Traders Invest. Corp.,* 624 F.Supp. 264 (D. Del. 1985); *see Davis v. Fendler,* 650 F.2d 1154 (9th Cir. 1981).

Granting default judgment is within a court's sound discretion. *Draper v. Coombs,* 792 F.2d 915, 924 (9th Cir. 1986). Factors whether to grant default judgment include:

1. The substantive merits of plaintiff's claim;
2. The sufficiency of the complaint;
3. The amount of money at stake;
4. The possibility of dispute as to any material facts in the case;
5. Whether default resulted from excusable neglect; and
6. "The strong policy of the Federal Rules of Civil Procedure favoring decisions on the merits."

*Eitel v. McCool,* 782 F.2d 1470, 1471-12472 (9th Cir. 1986).

With the entry of default in the case at hand, this Court may accept the factual allegations of DIRECTV's complaint as true to assess liability. DIRECTV pursues default judgment solely for statutory damages under the Communications Act for violation of section 47 U.S.C. §605(a).

/////

/////

**Plaintiffs' Federal Communications Claims**

47 U.S.C. § 605 addresses unauthorized publication or use of wire or radio communications and provides in pertinent part:

> (a) . . . no person receiving, assisting in receiving . . . any interstate . . . communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney . . . No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.
>
> . . .
>
> (e)(3)(A) Any person aggrieved by an violation of subsection (a) of this section . . . may bring a civil action in a United States district court or in any other court of competent jurisdiction.

47 U.S.C. § 605(e)(3)(C)(i)(II) authorizes statutory damages "not less than $1,000 or more than $10,000, as the court considers just." Damages are to be computed, "at the election of the aggrieved party," in accordance with any of the following: (I) actual damages suffered by the aggrieved party as a result of the violation and any profits of the violator; or (II) statutory damages for each violation of subsection (a) in a sum of not less than $1,000 or more than $10,000, as the court considers just. 47 U.S.C. § 605(e)(3)(C)(i)(II). 47 U.S.C. §605(e)(3)(C)(ii) authorizes damages up to $100,000 if the court finds the violation was willfully committed for commercial advantage or private financial gain. Alternatively, if "the court finds that the violator was not aware and had no reason to believe that his acts constituted violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250." 47 U.S.C. §605(e)(C)(iii). "To establish liability under § 605(a), a plaintiff must prove that the defendant received or assisted in receiving a communication to which he was not entitled." *In re DIRECTV, Inc.,* 2004 WL 2645971, *9 (N.D.Cal. 2004).

In the first claim, DIRECTV alleges that Charette received and assisted others in receiving DIRECTV's satellite transmissions without authorization. (Complaint ¶18.) The complaint alleges that Charette knew or had reason to know that receiving the satellite transmissions or assisting others in receiving the transmissions without authorization was prohibited. (Complaint ¶19.)

The specific amount of statutory damages assessed pursuant to § 605 rests within the sound discretion of the court. *Cablevision of S. Conn., Ltd. P'ship v. Smith,* 141 F.Supp.2d 277, 286 (D.Conn.2001). Courts have used a variety of methods to calculate damages under § 605, including (1) assessing the maximum statutory rate; (2) estimating the amount of services the defendant pirated and applying a multiplier to that figure; (3) adopting the plaintiff's estimate of the amount of services pirated; and (4) where there has been no evidence of the plaintiff's actual usage or commercial advantage, applying the statutory minimum for each pirated device. *DIRECTV, Inc. v. Getchel,* 2004 WL 1202717, at *2 (D.Conn. 2004). *See also*, *DirecTV v. Haskell*, 344 F.Supp.2d 761, 763-764 (D.Me. 2004).

DIRECTV has filed hundreds of similar lawsuits across the country, in Mexico and Canada. (Sichler Decl. ¶14.) In these cases, the courts have varied widely on award of damages. For instance, in *DIRECTV, Inc. v. Hedger*, 322 F.Supp.2d 879 (W.D.Mich.2004), DIRECTV alleged that defendant purchased and used a single Bootloader device to decrypt and view, and assisted others in decrypting and viewing, DIRECTV's encrypted satellite signal. The Court awarded DIRECTV statutory damages of $10,000 under 47 U.S.C §605 and 18 U.S.C. §2520 (Wiretap Act). In an extremely large award, the Court in *DIRECTV, Inc. v. Adkins*, 320 F.Supp.2d 474, 477 (W.D.Va. 2004), awarded $10,000 per device pursuant to 605(e)(4) against each of four defendant who purchased 205, 15, 20, and 82 bootloaders, respectively, and sold or redistributed them. In another large per violation action, the Court in *DirecTV, Inc. v. McDougall*, 2004 WL 2580769, 5 (W.D.Tex. 2004) awarded Plaintiff statutory damages of $70,000 ($10,000 per each of the seven different devices intended for resale) pursuant to 605(e)(4).

Some courts have awarded minimal statutory damages. *See, e.g., DirecTV, Inc. v. Perrier,* 2004 WL 941641, at *3 (W.D.N.Y. Mar. 15, 2004) (awarding $2,000 in damages under § 605(e)(3)(C)(i) where the complaint alleged that the defendant had purchased two pirate access devices); *DIRECTV, Inc. v. Kaas,* 294 F.Supp.2d 1044, 1048 (N.D.Iowa 2003) (awarding damages of $1,000 under § 605(e)(3)(C)(i) where the complaint alleged that the defendant had purchased a single pirate access device and there was no evidence that the defendant profited from the device or even used the device); *DirecTV v. Haskell*, 344 F.Supp.2d 761, *765 (D.Me.,2004) (Following the lead of several courts, this Court awards $1,000 for Haskell's violation of § 605(a) by virtue of his purchase and use of the device.)

5

Some courts have refused to award any damages. In *DIRECTV, Inc. v. Taylor*, 2004 WL 1878337 (D.Or. 2004), the court declined to award damages. The court said there was no direct evidence as to how many times defendant used pirate access devices, if at all, or actually received or assisted others in receiving plaintiff's satellite television signal. Similarly, in *DirecTV, Inc. v. Christomos*, 2004 WL 2110700 (D.Or. 2004), the Court declined to award statutory damages due to lack of evidence that the defendant actually received or assisted others in receiving plaintiff's satellite television signal.

Some courts have held that an award under 605(e)(4) targets commercial pirating. *Directv, Inc. v. Albright,* 2003 WL 22956416, at *2 (E.D.Pa. 2003) (holding that a reasonable reading of this subsection (e)(4) demonstrates that it was intended to target upstream manufacturers and distributors, not the ultimate consumer of pirating devices, such as defendant). *Accord DIRECTV, Inc. v. Montes*, 338 F.Supp.2d 352, 356 (D.Conn. 2004) (declining to award 605(e)(4) damages) and *DIRECTV, Inc. v. Getchel,* 2004 WL 1202717, *3 (D.Conn. 2004) (declined to award damages where there was no allegation or evidence that defendant was other than a consumer).

Plaintiff argues that it is entitled to 2 (the number of pirate access devices) times $10,000 in statutory damages. Plaintiff cites *Community Television Systems, Inc. v. Caruso*, 134 F.Supp.2d 455, 460-461 (D.Conn 2000) for the proposition that each device purchased and used by a defendant constitutes a separate violation of the Act. In *Community Television System,* the court assessed the maximum statutory award of $10,000. In that case, the defendants had purchased and used only a single pirate access device. The issue of possession and use of multiple pirate access devices was not before the Court. "The allegations in a complaint regarding the monetary amount of damages that should be granted in a default judgment are not controlling, and the mere assertion that defendants acted willfully is insufficient to justify enhanced damages." *Kingvision Pay Per View, Ltd. v. Ortega,* 2002 WL 31855367, *2 (N.D.Cal.2002). "[S]ince plaintiff's allegations of willfulness bear directly on the question of damages, the mere assertion that defendant acted willfully is insufficient to justify enhanced damages." *Kingvision Pay-Per-View, Ltd. v. Dailey,* 2002 WL 596806, *2 (N.D.Cal. 2002).

DIRECTV provides evidence of "actual damages suffered by the plaintiff." DIRECTV provides evidence of its value of the services a person has access to, the value of subscription and movies viewed only once, the value of the programming purchased by a typical high-end subscriber, and the average

bill sent to such subscribers. DIRECTV estimates that its daily damages are $7.53, which it multiplies by the number of days that Charette used the devices (1,263) for damages of $9,510.39. DIRECTV states that its actual damages does not include the significant expense incurred in investigating and preventing privacy. There is no evidence that Charette "significantly profited from his violations of the statute or induced or assisted others in engaging in similar misconduct." *Perrier,* 2004 WL 941641, p.4.

DIRECTV states that it requested in the complaint that the Court award damages of $10,000 per Pirate Access Device purchased and used by defendant and does not request any other amount, such as its lost profits. Because DIRECTV does not seek other damages, the Court declines to evaluate the evidence in support of DIRECTV's actual damages.

Here, the allegations do not support a conclusion that Charette was more than an ultimate consumer. There is no evidence that Charette distributed or profited from the purchase of the devices or intended them for resale. Therefore, an award of damages for violation of 605(e)(4) is not warranted.

Nonetheless, the default establishes that Charette purchased multiple devices and a reasonable inference is that Charette used or assisted others in the interception of the satellite transmission. Accordingly, an award under §605(a) of $2,000 for each of the 2 violations is appropriate.

## Request for Attorney's Fees

DIRECTV requests an award of attorneys' fees of $2,558.50 and costs to be established under Fed.R.Civ.P. 54.

A party aggrieved by a violation of 47 U.S.C. §605(e)(3)(B)(iii) is entitled to award of reasonable attorney's fees and costs. Section 605(e)(3)(B)(iii) mandates that courts "direct the recovery of full costs, including reasonable attorney's fees to an aggrieved party who prevails." Section §605 provides for recovery only of "reasonable" attorneys fees and costs. To determine a "reasonable" attorney fee award, district courts generally start by calculating the "lodestar" amount (the product of multiplying the number of hours reasonably expended on the litigation by a reasonable hourly fee). *See Hensley v. Eckerhart*, 461 U.S. 424, 433-437, 103 S.Ct. 1933, 1939- 1941 (1983); *City of Burlington v. Dague*, 505 U.S. 557, 561, 112 S.Ct. 2638, 2641 (1992). The fee applicant bears the initial burden of substantiating the hours worked and the rate claimed. *Strange v. Monogram Credit Card Bank of Georgia,* 129 F.3d 943, 945 (7th Cir. 1997).

1    DIRECTV states that it incurred attorneys fees of $748.50 in prosecuting this action up to the filing of this motion. (Columbo Decl. ¶10.) Two law firms were involved, Danner & Martyn ($233.74 requested fees), and Buchalter, Nemer, Fields & Younger ($514.75 requested fees) currently. DIRECTV argues that since the services provided spanned activities relating to all four defendants, DIRECTV divided the total amount of fees required by 4, unless the service related solely to Charette. (Columbo Decl. ¶10.) The amount requested for Danner & Martyn of $233.74. The amount requested for services provided by Buchalter, Nemer, Fields & Younger is $514.75 for services provided before the filing of this motion.

In contrast to prior motions, counsel has provided a chart which breaks down the fees by date and law firm.[3] The chart corroborates the amount of fees requested for work performed by each law firm.

The qualifications, however, of the attorneys who performed work from Danner & Martyn are not provided. The rates appear to be from $115 to $180 per hour. The work performed was drafting the complaint and preliminary case management. The amount requested for this firm, $233.74, could be considered reasonable, but it is also speculation as to whether the amount is reasonable without knowing the qualifications. Therefore, the amount is denied.

For the attorneys from Buchalter, Nemer who performed work, the only qualifications provided are for Kimberly Columbo. Ms. Columbo performed 8.1 of the hours. Her rate, see below, has been held to be $200 per hour. (8.1 hours time $200.00 per hour divided by 4 (work performed for all four defendants) is $405.)

DIRECTV also requests fees incurred for preparing this motion for default judgment.

Two attorneys have incurred fees: Kimberly Columbo, a 2000 graduate of McGeorge, bills at a rate of $235 per hour and Brandon Tran, a 2002 graduate of UCLA law school, bills at $215.00 per hour. Ms. Columbo incurred 1.5 hours on this motion and anticipates an additional 3 hours for preparing

---

[3] In the future, this chart should include a brief description of the activity performed. In its present version, the chart requires the Court to engage in time consuming cross referencing of activities. Fees have been disallowed in other similar DIRECTV motions for just this reason. While the chart provides a compilation of fees by date with the fee calculation, which was lacking in prior motions, the chart could be more encompassing. In this way, the chart would conserve judicial resources. Future motions will be subject to the court's discretion to disallow such fees, as they have been in the past.

for and attending the hearing on this motion. (4.5 hours x $235 = $1057.)  Brandon Tran incurred 3.5 hours in preparing this motion (3.5 hours x $215 = $752.50).  Total fees requested for the motion are $1,809.50.

The attorney hourly rates are slightly above the market rate.  A district court should calculate this reasonable hourly rate according to the prevailing market rates in the relevant community.  *Schwarz v. Secretary of Health & Human Services*, 73 F.3d 895, 906 (9th Cir. 1995).  The relevant community is "typically the community in which the district court sits."  *Id.*  An exception exists where plaintiffs have proven that "local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case."  *Schwarz v. Secretary of Health & Human Services*, 73 F.3d at 906 citing *Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1993).

The prevailing rate in the relevant community is the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  *Barjon v. Dalton*, 132 F.3d 501.  This Court has held in other litigations that the prevailing rate for top attorneys in the area is in the range of $225 to $250 per hour, with incremental decreases for attorneys of lesser experience and for staff.

A reasonable rate for Ms. Columbo is $200 per hour.  Thus, her fees would be (1.5 hours x $200 = $300.)

A reasonable rate for Mr. Tran is $175 per hour.  Thus, his fees would be (3.5 hours x $175 = $612.50).

Awarded fees are:

   (A) for work performed prior to the motion for default judgment - $405
   (B) for work performed on the motion for default judgment - $912.50.

Total fees $1317.50.

### Statute of Limitations

In the prior motion for default judgment against Dana Charette, filed on April 30, 2004, DIRECTV sought a default judgment for unauthorized interception of electronic communications in violation of the Electronic Communications Privacy Act ("Wiretap Act"), 18 U.S.C. §§ 2510-2521.  On

1  June 8, 2004, this Court denied recovery under the Wiretap Act, but did not preclude "default judgment under its other claims, in particular pursuant to the Communications Act, upon a showing <u>such claims are not barred by statutes of limitations</u>." (Doc. 34, p.6:20-22) (emphasis added.)

In the instant motion, pursuant to its claims under the Federal Communications Act, DIRECTV argues that its claims were filed within the statute of limitations.

The Federal Communications Act of 1934, 47 U.S.C. §605, does not provide an express statute of limitations for private actions brought for violation of the Act. Where a federal statute fails to provide any limitations period, the court generally borrows the limitations period from the most closely analogous state statute. *North Star Steel Co. v. Thomas*, 515 U.S. 29, 34, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995).

This Circuit has not yet addressed the statute of limitations under the Federal Communications Act. In *Prostar v. Massachi*, 239 F.3d 669 (5th Cir.2001), the Fifth Circuit held that "the three-year limitations period articulated in the Copyright Act governs [plaintiff's] FCA claims." *Id.* at 678. The Fifth Circuit initially found that the tort of conversion provided the closest state-law analogue to plaintiff's claims under 47 U.S.C. § 605, but declined to apply the limitations period under Louisiana conversion law to claims brought under 47 U.S.C. § 605 because the "application of state conversion law in each of the fifty states would result in widely varying limitations periods" and undermine the implementation of the FCA." *Id.* at 676. The Third Circuit, however, applied a state law statute of limitations. The Third Circuit held that the two-year statute of limitations period applicable to Pennsylvania's piracy statutes governed claims under 47 U.S.C. § 650. *Kingvision Pay-Per-View v. 898 Belmont, Inc.,* 366 F.3d 217 (3d Cir.2004). The Third Circuit acknowledged that "federal district courts have applied the federal limitations period under the Copyright Act to FCA claims when the only state law from which to borrow a limitations period was a general conversion law," but that such cases are not determinative where a more analogous state statute exists."

The Court determines that it need not resolve the issue of which statute of limitations applies. The statute of limitations is an affirmative defense which was waived by entry of default. *In re Estate of Ferdinand E. Marcos Human Rights Litigation*, 978 F.2d 493, 495 n.2 (9th Cir. 1992), *cert. denied*, 508 U.S. 972 (1993); *See also*, *U.S. v. DeTar*, 832 F.2d 1110, 1114 (9th Cir. 1987) (The statute of

limitations is not jurisdictional. It provides an affirmative defense, which is waived in this circuit if it is not asserted before or at trial.) In this case, default has been entered. Therefore, a defect in filing under the applicable statute of limitations, if any, has been waived.

## CONCLUSION

For the reasons discussed above, this Court RECOMMENDS to:

1. GRANT the motion for default judgment in favor of DIRECTV, Inc. and against defendant Dana Charette in the amount of $4,000 in statutory damages pursuant to 47 U.S.C. §605(a),

2. GRANT the request for an award of attorneys fees in the amount of $1,317.50, and

3. GRANT the request for costs to be awarded pursuant to Rule 54.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304. Within 10 court days after service of these findings and recommendations on the parties, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties and the magistrate judge in compliance with this Court's Local Rule 72-304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Responses to objections shall be filed and served within 10 court days after service of the objections in compliance with this Court's Local Rule 72-304(d). A copy of the responses shall be served on the magistrate judge. The district judge will review the magistrate judge's findings and recommendations, pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   May 24, 2005**              /s/ Lawrence J. O'Neill
b9ed48                                 UNITED STATES MAGISTRATE JUDGE